COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and O'Brien

EUGENE JEFFREY McNEIL

v.      Record No. 0504-19-3

CITY OF ROANOKE DEPARTMENT OF
 SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
AUGUST 20, 2019

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

(Phillip R. Lingafelt; Glenn, Feldmann, Darby & Goodlatte, on
brief), for appellant. Appellant submitting on brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Sarah Jane Newton, Guardian *ad litem* for the minor
child, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.


Eugene Jeffrey McNeil (father) appeals an order terminating his parental rights and

approving the foster care goal of adoption. Father argues that the circuit court erred by (1) denying

his motion for continuance; (2) finding that the evidence was sufficient to terminate his parental

rights and that termination was in the child's best interests; and (3) finding that the evidence was

sufficient to approve the foster care goal and that adoption was in the child's best interests.[1] Upon

reviewing the record and briefs of the parties, we conclude that the circuit court did not err.

Accordingly, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In his assignments of error, father argued that the circuit court erred by terminating his
parental rights under Code § 16.1-283(B) and (C)(2), but the circuit court terminated his parental
rights under Code § 16.1-283(C)(2) only. Accordingly, we will not consider father's arguments
related to Code § 16.1-283(B).

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Father is the biological father to a child born in 2014.[3] The West Virginia Department of Health and Human Resources obtained custody of the child when he was four months old after the child's mother was arrested. Father was incarcerated in Norfolk at the time, but was released in January 2015. In October 2015, the Circuit Court of Hampshire County, West Virginia entered orders awarding legal and physical custody of the child to father, over the objection of the guardian *ad litem* at the time.

In February 2016, the Franklin County Department of Social Services received a call that father was allegedly abusing or neglecting the child. The child was placed in foster care from February 27 through March 3, 2016, and the matter was determined to be unfounded as to physical neglect.

On February 29, 2016, father signed a notarized statement designating his girlfriend, Marlena Lawrence-Harvey as the child's "legal caregiver and guardian" because he was charged with a criminal offense. Father was incarcerated from May 19, 2016, through August 18, 2016,

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[3] The Circuit Court of Hampshire County, West Virginia terminated the parental rights of the child's mother in 2015.

for his conviction of interfering with property rights. Then, in August 2016, he was convicted of unauthorized use and credit card theft and received an active sentence of twenty-eight months.

In June 2017, while father was incarcerated, Lawrence-Harvey took the child to the pediatrician for a check-up and the medical staff observed marks and bruises on the child's legs that appeared to be "switch" marks. The child's growth rate also had dropped since his last appointment in March 2016 from 64% to 10%. The doctor contacted the City of Roanoke Department of Social Services (the Department). When asked how the child's injuries occurred, Lawrence-Harvey reported that the child fell backwards in a pile of sticks, but then she said that he slid down the steps to her apartment. She also said that the child had jumped off a bed and landed on top of another child's doll house. Lawrence-Harvey became "visibly agitated" when the Department questioned her stories about the child's injuries.

The Department also asked Lawrence-Harvey about the child's poor growth rate. Lawrence-Harvey reported that she had stopped feeding him "junk food" approximately eight months earlier, but also said that she gave him granola, cereal, raisin bran, and goldfish crackers every hour. The child was very hungry while he was at the hospital; he ate four bags of crackers and drank two juice boxes and one pint of milk.

Due to Lawrence-Harvey's inconsistent statements and the child's poor growth rate, the Department decided to remove the child from her care. The Department contacted father in the jail, and he suggested two possible placements. After the Department determined that neither placement was a viable option, the Department placed the child in foster care. On June 13, 2017, the City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order. On July 6, 2017, the JDR court adjudicated that the child was abused or neglected, and on August 4, 2017, the JDR court entered the dispositional order.

The Department maintained contact with father by visiting him at the jail and corresponding with him and his attorney. The Department informed father that for the child to be returned to his care after his release from incarceration, father had to obtain stable and appropriate housing, maintain sobriety, comply with random drug screening, complete a substance abuse assessment and follow through with all recommendations, obtain stable employment, comply with all probation requirements, not receive any additional criminal charges, complete parenting classes, and regularly visit with the child in a supervised setting. The Department encouraged father to participate in programs at the jail. While incarcerated, father completed a re-entry program, a fatherhood program, an anger management program, a substance abuse program, a post-traumatic stress disorder class, and a public speaking class.

Father was released from incarceration on July 31, 2018. He initially resided with his sister, but had to move out due to his felony record and live with a friend. Father secured employment with Workforce Solutions and a lawn care service company. The Department referred father to Intercept Youth Services for parenting coaching sessions. The Department offered weekly supervised visitations, and father visited with the child three times and missed three visits. When father visited, he was appropriate with the child. On September 8, 2018, father was incarcerated again for a new criminal charge.

In October 2018, the Department filed a petition to terminate father's parental rights. On October 30, 2018, the JDR court terminated father's parental rights to the child and approved the foster care goal of adoption.

Father appealed the JDR court's ruling to the circuit court, and a hearing was scheduled for February 14, 2019. On February 8, 2019, father filed a motion for a continuance. He explained that the hearing for his most recent criminal matter was scheduled for April 15, 2019, and he requested that the termination hearing in the circuit court be continued until after his

criminal trial. The parties argued the matter before the circuit court on February 13, 2019, and the circuit court denied the motion for a continuance.

On February 14, 2019, the parties appeared before the circuit court for a *de novo* hearing on father's appeal. The Department presented evidence that when the child entered foster care, he was "seriously underweight" and had "a lot of fears." The child also was delayed in speech and not very socialized.

The child had been in the same foster home since the Department removed him in June 2017. He had bonded with his foster mother and foster sister and was doing very well in their home. Since he had entered foster care, his weight had increased and was in the average range. The social worker testified that all of the child's previous anxieties had disappeared. He attended day care, and his speech had improved "dramatically." He could count to 100 and excelled at spelling. He also had participated in a dance class and a soccer camp.

At the conclusion of the Department's evidence, appellant made a motion to strike, which the circuit court denied. Father testified that he anticipated being released from incarceration on April 15, 2019. He had enrolled with a re-entry program that would assist him with obtaining housing once he was released, and he still had his job with the lawn care service company. Father asked the circuit court for more time, so that he could care for the child. He explained to the judge that he had planned to live in Lynchburg, as he did when he was released in July 2018, even though all of the resources and the child were in the Roanoke area.

At the conclusion of all of the evidence and argument, the circuit court held that it was in the child's best interests to terminate father's parental rights under Code § 16.1-283(C)(2). This appeal followed.

ANALYSIS

*Continuance*

Father argues that the circuit court erred when it denied his motion for continuance. "The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34 (2007). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." Id.; see also Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 82 (2014).

Father contends that if the termination hearing had been scheduled after his criminal hearing, then he would have had more time to show that he could have taken care of the child. He also asserts that a continuance would have provided him with "a legitimate opportunity to keep his family together." He emphasizes that he had plans for housing and employment, and the child would not have been harmed if the continuance had been granted.

A similar argument was raised in Geouge v. Traylor, 68 Va. App. 343 (2017). There, Geouge requested that the adoption proceeding be continued until after she was released from incarceration, so that she could "present herself as a ready parent whose efforts at custody would not have been hampered by being incarcerated at the time a decision was being made." Id. at 374. This Court held that the trial court did not err in denying her motion to continue the hearing. Id. at 375. We found that Geouge had not proven that she was prejudiced by the trial court's ruling. Id. at 374-75. To the contrary, Geouge participated in the proceedings and was "ably represented" by counsel. Id. at 374. Geouge's criminal history and substance abuse issues were factors that the trial court would have considered "whether the trial took place a month before her release from prison or in the days or months immediately after her release." Id.

Regardless of whether the hearing occurred before or after her incarceration, the trial court "would have been required to engage in conjecture about what the future held for Geouge regarding her ability to stay out of prison and parent [her child] given her years-long history of criminal and substance abuse issues." Id. at 375. We explained that "[n]o one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Id. (quoting Frye v. Spotte, 4 Va. App. 530, 536 (1987)).

Likewise, in this case, father did not prove that he was prejudiced by the circuit court's ruling denying his continuance request. Father was present at and participated in the proceeding. The circuit court's denial of his motion did not prevent him from presenting his case or otherwise "lose the case." Id. at 374. As with Geouge, the "circuit court's ultimate ruling against [him] was the result of its determination of the facts of the case and not the result of the denial of [his] continuance request." Id. Father had been incarcerated for most of the child's life, and even if the hearing had not occurred until after April 15, 2019, the circuit court still would not have known whether father would have continued to engage in criminal activity or whether he would have been able to stay out of prison and care for the child. See id. at 375. Because father did not prove that he was prejudiced by the circuit court's ruling, we cannot say that the circuit court erred in denying his continuance request. Id.

*Termination of Parental Rights*

Father argues that the circuit court erred in finding that there was sufficient evidence to terminate his parental rights under Code § 16.1-283(C)(2) and that the termination was in the best interests of the child.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best

interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues that he was not given an opportunity to remedy the conditions that led to the child's placement in foster care and that the Department did not make reasonable and appropriate efforts.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005).

Father was incarcerated when the child entered foster care, and he was incarcerated at the time of the circuit court hearing. The circuit court held that "[i]t's his own misconduct that is the hurdle and the road block that's kept him from getting out and complying with the very simple standards that the Department [established]."

The child had been in and out of foster care for years. The child had been placed in foster care in December 2014, when he was four months old. The child had lived with father from September 2015 until March 2016. Then, father was incarcerated, and the child had lived with

father's girlfriend until June 2017, when the Department removed him and placed him in foster care. When father was released in July 2018, he had an opportunity to remedy the conditions that led to the child's continued placement in foster care, but instead he committed another criminal offense, which, as the circuit court found, led to "another half a year's confinement for him." Considering the circumstances, the circuit court did not err in finding that father had "failed to make substantial progress . . . toward elimination of the conditions which required continuation of the child's foster care placement."

Contrary to father's arguments, the Department was not required to offer him services while he was incarcerated. See Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64 (2004). This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. "[A]s long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child." Id. at 164. Nevertheless, the Department visited father in jail and corresponded with him and his attorney. The Department encouraged him to participate in services while he was incarcerated, and he did so by completing numerous classes. When father was released from incarceration in July 2018, the Department referred him to parenting coaching sessions and arranged for six visitations with the child, but father only attended three visitations.

At the time of the circuit court hearing, the child had been in foster care for over twenty months. When he entered foster care, he had bruises and marks on his legs. He was severely underweight and had a lot of anxiety. The Department presented evidence that the child had done very well in foster care. His weight was average. He was no longer anxious and afraid. He was socializing, participating in extracurricular activities, and learning to count and spell. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out

when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). The circuit court did not err in finding that termination of father's parental rights was in the child's best interests.

*Adoption*

With respect to father's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.